IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HAROLD D. HORNSBY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3: 24-CV-2663-E-BW |
| | § | |
| HOWARD LUTNICK, et al., | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a motion filed by Defendants Howard Lutnick, Secretary for the U.S. Department of Commerce; John Guenther, Acting General Counsel, Office of General Counsel for the U.S. Department of Commerce; Andrea R. Lucas, Acting Chair of the Equal Employment Opportunity Commission ("EEOC" or "Commission"); Henry J. Kerner, Acting Chairman of the Merit Systems Protection Board ("MSPB" or "Board"); and Junish Arora, Acting Director of the U.S. Department of Commerce's Office of Civil Rights (collectively, "Defendants") to dismiss Plaintiff Harold Hornsby's Fourth Amended Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6). (Dkt. No. 45.) This case has been referred to the undersigned United States magistrate judge for pretrial management and recommendation on claim-dispositive motions pursuant to 28 U.S.C. § 636(b) and Special Order No. 3-354. (*See* Dkt. No. 1.)

Based on the relevant filings and applicable law, the undersigned **RECOMMENDS** that Defendants' motion (Dkt. No. 45) be **GRANTED,** and all

claims asserted in Hornsby's fourth amended complaint (Dkt. No. 41) be dismissed as set forth below.

## I. BACKGROUND

### A.    District Court Procedural History

Plaintiff Harold Hornsby, proceeding pro se, originally filed this lawsuit on October 23, 2024, alleging that he was discriminated against on the basis of race, color, and sex by his employer, the U.S. Census Bureau ("Bureau").  (*See generally* Dkt. No. 3.)  Thereafter, Hornsby amended his complaint multiple times, but he repeatedly failed to properly serve all of the named Defendants. (*See, e.g.*, Dkt. No. 60.)  Hornsby filed a first amended complaint on November 20, 2024 (Dkt. No. 13), a second amended complaint on November 26, 2024 (Dkt. No. 14), and a third amended complaint on December 2, 2024 (Dkt. No. 17).  On March 28, 2025, Hornsby filed a fourth amended complaint, asserting claims under a variety of federal statutes and regulations, including the Civil Service Reform Act of 1978 (the "CSRA"), the Equal Pay Act (the "EPA"), Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, the Age Discrimination in Employment Act of 1967 (the "ADEA"), the First Amendment, and the Fifth Amendment, related to his employment with the Bureau, and naming for the first time as defendants the Acting Chair of the EEOC, the Acting Chairman of the MSPB, and the Acting Director of the U.S. Department of Commerce's Office of Civil Rights.  (*See generally* Dkt. No. 41.)

On April 11, 2025, Defendants filed their motion to dismiss (Dkt. No. 45 ("Mot.")), wherein they noted that Hornsby had not requested issuance of summonses for the newly named defendants and had not yet completed service under Rule 4(i) (*id*. at 1 n.1).

Then, on July 18, 2025, the Court deemed Hornsby's fourth amended complaint (Dkt. No. 41 ("Compl.")) the operative complaint and ordered Hornsby to serve each defendant and file either proof of valid service or an executed waiver of service pursuant to Fed. R. Civ. P. 4(d) no later than August 7, 2025. (*See* Dkt. No. 60). On July 24, 2025, Hornsby requested the Clerk to issue summons to Defendants Tinisha L Agramonte, Director, Office of Civil Rights (Dkt. No. 67), Henry J Kerner, Acting Chair Merit System Protection Board (Dkt. No. 66), Leslie Kiernan, Director Office of General Counsel (Dkt. No. 62), Andrea R Lucas, Acting Chair EEOC (Dkt. No. 63); and Howard Lutnick, Secretary Dept of Commerce (Dkt. No. 61), after which the Clerk issued the summonses as requested (*see* Dkt. Nos. 68, 72, 81), and each was returned executed (*see* Dkt. Nos. 74, 75, 77, 83, 84, 85). On April 28, 2025, Hornsby filed two separate documents styled as briefs response in opposition to the motion to dismiss (Dkt. Nos. 51, 52), then filed another brief on May 4, 2025 (Dkt. No. 53). The three documents are substantially similar (if not identical) and primarily repeat the allegations in his complaint and fail to meaningfully address Defendants' arguments in favor of dismissal. Defendants filed a reply on May 12, 2025 (Dkt. No. 55 ("Reply")), at which time the motion (Dkt. No. 52) became ripe for consideration.

Then, on May 16, 2025, Hornsby filed a motion seeking leave to file response to Defendants' reply—essentially, a surreply. (Dkt. No. 56.) The Court's rules provide for a motion, response, and reply. *See* N.D. Tex. L. Civ. R. 7.1. As explained above, Hornsby has already filed three responses to Defendants' motion, and he has no right to file an additional responsive pleading after Defendants' reply. "The local rules do not allow surreplies as a matter of course." *Neely v. Khurana*, No. 3:07-CV-1344-D, 2009 WL 1605649, at *3 n.4 (N.D. Tex. June 5, 2009). Hornsby has not shown a basis for allowing a surreply in this instance and has not complied with local rules in filing his motion. *See* N.D. Tex. L. Civ. R.7.1(b) (requiring a certificate of conference on motions seeking extension or leave of court). Therefore, the Court declines to consider Hornsby's unauthorized surreply, and his motion to file a surreply (Dkt. No. 56) will be denied by separate order.

**B.    Relevant Factual History**

### 1.  Hornsby's Employment at the Bureau

Hornsby alleges that he began his employment with the Bureau October 1, 2018, and was "constructively removed" on September 24, 2021. (Compl. ¶ 54.) According to Defendants, Hornsby was employed at the Bureau for almost three years in several "time-limited appointments," and "his final time-limited appointment expired on September 24, 2021, at which time he separated from the Bureau." (Dkt. No. 37, at App. 002, 004.)

It is difficult to discern the precise dates of Hornsby's various employment appointments at the Bureau as his factual allegations are scattered throughout the

complaint's 57 pages in a rambling and repetitious manner and the event dates are not always clear. (*See generally* Compl.) Although the complaint lacks a cogent chronological narrative of events, the undersigned is able to glean the following regarding Hornsby's employment history with the Bureau and his legal contentions arising therefrom.

Hornsby's starting position at the time he was hired is unclear, but he alleges that in February 2019 (approximately four months after he was hired), immediate supervisor Heather Chronister instructed Hornsby that he was immediately assigned to "manage and coordinate the logistics of space leasing" at the Dallas Regional Area Census Center ("D.A.R.C.C.") in Irving, Texas, and promised Hornsby that she would appoint him to an open "Space & Listing Representative" position and promote him to GG-12 pay grade and pay him commensurate with the Space & Leasing work performed after February 2019. (Compl. ¶¶ 48-49.)

Then, Hornsby alleges that on November 19, 2019, he "applied [for] and was granted GG-9 Administrative Specialist external referral" and was offered an appointment with an annual salary of $66,831.00, which he "agreed to, accepted[,] and signed the . . . Offer Letter Agreement for an annual salary of $66,831.00." (Compl. ¶¶ 30-31.) Hornsby's position between February 2019 when Chronister allegedly promised him a promotion to a GG-12 Space & Listing Representative position and his acceptance of an offer for a GG-9 Administrative Specialist position is unclear. Hornsby alleges he signed the Offer Letter Agreement before Manager Heath Zwalen on November 19, 2019, and was never requested to digitally sign the

Offer Letter Appointment.  (*Id.* ¶ 32.)  When he received his first GG-9 bi-weekly

pay, he discovered that he was not receiving the agreed-to annual salary $66,831.00.

(*Id.* ¶ 33.)  When he complained about not receiving a written copy of this Offer

Letter proving the agreed-to annual salary, he was repeatedly told the letter was in

his file.  (Compl. ¶¶ 34-36.)  He alleges the Offer Letter Agreement was deliberately

withheld as "retaliation."  (*Id.* §§ 36-37.)  He was ultimately provided a copy of the

Offer Letter Agreement on September 7, 2021.  (*Id.* ¶ 39.)  He appears to allege that

he never received the agreed-to annual salary of $66,831.00, while other "[Bureau]

employees were paid annual salaries under the terms of their Offer Letter written

contractual agreements."  (*Id.* ¶¶ 44-45.)

     Hornsby next alleges that the Performance Management Report that was

digitally signed by Chronister on January 24, 2020 appraised and rated his

performance as a Space & Listing Representative even though he was a GG-9

Administrative Specialist and was never appointed to a Space & Listing

Representative position as promised.  (*Id.* ¶¶ 50-51.)  Hornsby further alleges that the

Performance Management Report's repeated use of the words "Management /

Coordinator / Logistic" substantiates his allegation that Chronister promised him a

promotion to a Space & Listing Representative position and the GG-12 pay grade.

(*Id.* ¶ 52.)  Hornsby includes an alleged excerpt from the Performance Management

Report entitled "Summary Rating Narrative Documentation," in which he

underlines the words "logistics," "managed," and "coordinated."  (*Id.*)

Hornsby also alleges that during his tenure with the Bureau, he "received approximately thirty-five job referrals for permanent employment with the federal government," and during a second interview on one of those referrals, the hiring manager requested that Hornsby provide an updated Performance Review Report, which he was unable to provide because Chronister deprived him of the right to Performance Review due process. (*Id.* ¶¶ 54-55.) He complained of this in a telephone conversation and text message with Chronister on August 24, 2020, but apparently an updated Performance Review Report was never provided. (*Id.* ¶¶ 56-58.)

Hornsby continued to complain to his new immediate supervisor Don Carrow, after which Carrow presented Hornsby with a Performance Management Report for signing some time in November 2020. (*Id.* ¶ 65.) But, according to Hornsby, the document presented to him already had "December 3, 2019" handwritten in the date section for all three signers, and in this report, Carrow purported to rate Hornsby's performance from October 1, 2020, to September 30, 2021, although Carrow was not his supervisor during this time period. (*Id.*) Then Hornsby alleges that on November 27, 2020, Carrow presented an additional Performance Management Report to Hornsby for signing, and that report likewise purported to rate Hornsby's performance from October 1, 2020, to September 30, 2021, although Carrow was not his supervisor during this time period. (*Id.*)

Then, he alleges that in August of 2021, Carrow advised him that his Not To Exceed ("NTE") employment date had been extended until late December 2021, but

then in early September 2021, Carrow told him that management had decided to rescind the December 2021 NTE employment date and instead "decided to extend Caucasian employee Magdalena Rivera's NTE employment date to replace Hornsby in the space leasing appointment position. (Compl. ¶¶ 80-84.).

### 2. Hornsby's Appeals to the EEOC and MSPB

Following his termination, Hornsby filed several equal employment opportunity ("EEO") complaints with the civil rights office of the Department of Commerce, asserting allegations of discrimination and retaliation on the basis of race, color, age, and disability based on the Bureau's refusal to extend Hornsby's NTE employment date. (Dkt. No. 37 at App. 002, 024.) His EEO complaints were ultimately consolidated before an EEOC administrative judge ("AJ") under EEOC Hearing No. 440-2022-00247X. (*Id.* at App. 024.) In that case, the EEOC AJ found that Hornsby "failed to show that any his claims would be within the [MSPB's] jurisdiction and therefore found that [Hornsby's] EEO complaints did not involve a 'mixed case issue.'"[1] (*Id.*) Accordingly, the EEOC AJ granted summary judgment in favor of the Bureau, including on Hornsby's claim regarding his term appointment not being extended on September 24, 2021. (*Id.*)

Hornsby also appealed his termination to the MSPB, alleging that the Bureau's actions were discriminatory based on his race, age, disability and prior

---

[1] A "mixed case" is "a complaint of employment discrimination filed with a federal agency" that stems "from an action that can be appealed to the Merit Systems Protection Board." 29 C.F.R. § 1614.302(a)(1).

protected activity. (Dkt. No. 37 at App. 002-003, 024.) He also argued that the Board had jurisdiction over his claim as an Individual Right of Action ("IRA") appeal because he engaged in protected whistleblower disclosures under the Whistleblower Protection Act ("WPA") and the Whistleblower Protection Enhancement Act ("WPEA"). (*Id.*) An MSPB AJ issued an Initial Decision dismissing Hornsby's MSPB appeal for lack of jurisdiction because his separation from his position when his appointment expired was not a removal action appealable to the Board. (*Id.* at App. 004, 024.) Importantly, the MSPB AJ found that Hornsby failed to allege that the Bureau actually appointed him to the new term as promised and then removed him before it expired. (*Id.* at App. 005.)

Additionally, the MSPB AJ found that Hornsby had not exhausted his administrative remedies because Hornsby had raised his retaliation claims with the Office of Special Counsel ("OSC") on January 17, 2023, and the OSC had not concluded its investigation (*Id.* at App. 005.) Absent an appealable action, it was determined that his discrimination claims were not an independent basis for MSPB jurisdiction. (*Id.* at App. 025.) Because Hornsby's appeal asserted no actions that were otherwise appealable to the Board, he was required to exhaust his administrative remedy with the OSC before the Board could have jurisdiction over an IRA appeal. (*Id.* (citing 5 C.F.R. § 1209.2(b)(1)).) Hornsby sought review by the full Board, and on July 26, 2024, the MSPB issued a Final Order affirming the MSPB AJ's Initial Decision. (*Id.* at App. 015-017. 025.)

Thereafter, Hornsby filed a petition with the Equal Employment Opportunity Commission, seeking review of the Final Order issued by the MSPB. (Dkt. No. 37 at App. 023.) The EEOC determined that, while it has jurisdiction over mixed case appeals, there was "little point in continuing to view this matter as a 'mixed case' because the MSPB did not address any matters within [EEOC's] jurisdiction." (*Id.* at App. 025) Furthermore, although Hornsby raised claims of discrimination before the MSPB which would ordinarily be considered a "non-mixed" case and be processed accordingly, the EEOC regulations "provide that a complaint shall be dismissed if it states the same claim that is pending before or has been decided by the agency or Commission." (*Id.* (citing EEOC Regulation 29 C.F.R. § 1614.107(a)(l)).) As the decision notes, Hornsby filed an EEOC complaint regarding the same agency action of not renewing his temporary appointment and his claims of discrimination were previously adjudicated in EEOC Hearing No. 440-2022-00247X. (*Id.* at App. 026.) Accordingly, there was "nothing remaining for the Agency to process." (*Id.*)

On September 23, 2024, the EEOC denied Hornsby's petition seeking review of the MSPB Final Order and notified him of his right to file a civil action in the United States District Court within 30 calendar days of the decision. (*Id.*) Hornsby then timely filed suit in this Court. (*See* Dkt. No. 1.)

-10-

## II. LEGAL STANDARDS

### A.    Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 391 (5th Cir. 2019) (quoting *Texas v. Travis Cnty.*, 910 F.3d 809, 811 (5th Cir. 2018)).  Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A motion to dismiss under Rule 12(b)(1) is the vehicle through which a party can challenge a federal court's subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).  When examining a factual challenge to subject matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997); *see also Clark*, 798 F.2d at 741.  If the court determines that it

lacks subject-matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

When a motion to dismiss for lack of subject matter jurisdiction "is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (explaining that "the court should dismiss only on the jurisdictional ground . . . without reaching the question of failure to state a claim"). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Ramming*, 281 F.3d at 161. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

**B.    Rule 12(b)(6)**

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-

pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

Rule 8 requires that a civil pleading submitted to the Court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rule 8 also requires that the pleading contain "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). Although no technical form is required, each allegation in a pleading must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). In reviewing the adequacy of

a pleading, the task of this Court is not to decide if the pleading party will eventually
be successful, but to determine if a "legally cognizable claim" has been asserted.
*Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of
the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "Pleadings"
for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re
Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007); *Collins v. Morgan
Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); s*ee also Gill as Next Friend of
K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an
attachment to a complaint generally becomes 'part of the pleading for all purposes,'
including for ruling on a motion to dismiss." (quoting Fed. R. Civ. P. 10(c); citations
omitted)). And "[w]hen 'an allegation is contradicted by the contents of an exhibit
attached to the pleading, then indeed the exhibit and not the allegation controls.'"
*Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (quoting *United
States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)
(citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir.
1940))).

Similarly, documents "attache[d] to a motion to dismiss are considered part of
the pleadings, if they are referred to in the plaintiff's complaint and are central to [his]
claim[s]." *Collins*, 224 F.3d at 498-99 (quotations omitted); *accord Benchmark
Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir.2003). Attachments

falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment. *See Benchmark Electronics*, 343 F.3d at 725.

It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f ... matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pro se complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)). And "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

A plaintiff may not amend his allegations through a response to a motion to dismiss, Fed. R. Civ. P. 8(a), but leave to amend must be granted freely "when justice so requires," Fed. R. Civ. P. 15(a)(2). One reason to deny amendment is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

## III. ANALYSIS

Hornsby alleges nine claims against Defendants. (*See generally* Compl.) First, Hornsby alleges that the Bureau violated the CSRA. (*Id.* ¶¶ 6–8.) Second, Hornsby asserts the Bureau would not provide him a copy of his offer letter and paid him less than the salary amount stated in the offer letter. (*Id.* ¶¶ 30–45.) Third, he alleges there were procedural errors with his performance reviews, which he asserts prevented him from securing another federal job. (*Id.* ¶¶ 48–76.) Fourth, Hornsby alleges the Bureau discriminated against him on the basis of race, color, and sex as he claims he was replaced with a white female. (*Id.* ¶¶ 77, 79–102, 104–23.) Fifth, Hornsby claims that the Bureau failed to post open positions when hiring, which amounted to race, color, and sex discrimination. (*Id.* ¶¶ 125–40.) Sixth, Hornsby argues that the Bureau retaliated against him for filing an EEO complaint by refusing to provide the Texas Unemployment Commission with his correct wage information. (*Id.* ¶¶ 142–57.) Seventh, Hornsby asserts that the Bureau's Office of General

Counsel "suppressed" the EEO report of investigation during his MSPB appeal, violating his constitutional rights under the First and Fifth Amendments. (*Id.* ¶¶ 169–81.) Eighth, Hornsby claims that the U.S. Department of Commerce's Office of Civil Rights retaliated against him by preventing him from amending his EEO claims. (*Id.* ¶¶ 164–68.) Finally, Hornsby alleges the EEOC and the MSPB retaliated against him because he did not receive a hearing with either agency. (*Id.* ¶¶ 29, 47, 78, 103, 124, 141, 158–62.)

For the reasons explained below, the undersigned finds that Hornsby fails to establish subject matter jurisdiction for his claims against the EEOC and the MSPB, and his remaining claims fail to state a claim as to any of the Defendants.

## A.    Attachments to the Pleadings

Hornsby's operative complaint (Dkt. No. 41) includes one attachment. At the last page of the fourth amended complaint is a copy of a decision issued by the Secretary, Department of Commerce on December 20, 2022, dismissing a complainant's request for class certification. (*Id.* at ECF p. 58.) Although the document lacks any information identifying the complainant, the undersigned understands that Hornsby is the complainant as his efforts to seek class certification before the EEOC are documented elsewhere in the record. (*See, e.g.*, Dkt. No. 37 at App, 002, 003.) In any event, as the document is attached to Hornsby's complaint, it is part of the pleadings for ruling on the present motion to dismiss. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205; *see also Gipson v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-4820-L, 2015 WL 2069583, at *4 (N.D. Tex. May 4, 2015).

The undersigned also notes that throughout his fourth amended complaint, Hornsby presents as "evidence" material allegedly quoted from emails and other communications, excerpts from "sworn interrogatory testimony" provided during the administrative review process, and excerpts from the administrative agency decisions. (*See, e.g.*, Compl. ¶¶ 112, 113, 114,169, 172, 176, 178.) But Hornsby does not attach any of these documents to the complaint. In some instances, it appears that Hornsby has emphasized portions of this quoted material with capitalization and bold font that likely were not in the original materials. Nevertheless, the undersigned accepts the factual allegations contained in these quoted materials as true and views them in the light most favorable to Hornsby. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

Turning to attachments to Defendants' pleadings, the undersigned has reviewed the attachments submitted in support of the present motion to dismiss (Dkt. No. 46), as well as the attachment submitted in support of their first motion to dismiss (Dkt. No. 37),[2] which include the following: (1) the March 2, 2023 Initial Decision by Merit Systems Protection Board Administrative Judge (Dkt. No. 37 at App. 001-015); (2) the July 26, 2024 Final Order by Merit Systems Protection Board (*id*. at App. 015-022); (3) the September 23, 2024 Decision by Equal Employment Opportunity Commission Office of Federal Operations (*id*. at App. 023-027); and

---

[2] These attachments will be cited to the relevant document number and appendix ("App.'") page number, e.g., "Dkt. No. 37, App. 002."

-18-

(4) the January 24, 2023 Decision by Equal Employment Opportunity Commission Administrative Judge (Dkt. No. 46 at App. 001-008).  Because all of these documents are referenced in Hornsby's fourth amended complaint and are central to his theory of the case, they are considered part of the pleadings.  *See Collins*, 224 F.3d at 498-99. Accordingly, Defendants' motion to dismiss need not be converted into a motion for summary judgment.  *See id.*; *Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Gipson*, 2015 WL 2069583, at *4; *see also Burgess v. RAB, Inc.*, No. 3:23-CV-2845-L-BN, 2024 WL 3237183, at *2 (N.D. Tex. June 6, 2024), *adopted*, 2024 WL 3240665 (N.D. Tex. June 28, 2024).

## B.    Lack of Subject Matter Jurisdiction

Hornsby's claims against the EEOC and the MSPB arise from his dissatisfaction with the manner in which these agencies resolved his complaints and what he alleges are due process violations because he did not receive a hearing with either agency.  (*See* Compl. ¶¶ 29, 47, 78, 103, 124, 141, 158–62.)  Defendants argue that these claims should be dismissed for lack of subject matter jurisdiction because Hornsby has not established that the federal government waived its sovereign immunity from suit and because Title VII does not confer a private right of action against the EEOC, the MSPB, or any other agency challenging the administrative process by which the agency investigated and resolved a complaint of discrimination. While it is true that this Court has jurisdiction over his claims pursuant to 5 U.S.C. § 2302, as Hornsby maintains in his response (*see* Dkt. No. 51 at 8), that jurisdiction applies to the federal employer—in this case, the Bureau—not to the federal agencies

who adjudicated his complaints. Accordingly, as detailed further below, this Court lacks jurisdiction over Hornsby's claims against the EEOC and the MSPB.

The United States, as a sovereign, has immunity from suit unless it makes an express waiver of immunity and consents to being sued. *Brinac v. E.E.O.C.*, No. 93-2118, 1993 WL 241492, at *2 (5th Cir. June 15, 1993). The "existence of consent is a prerequisite for jurisdiction." *U.S. v. Mitchell*, 463 U.S. 206, 212 (1983). Here, no such waiver has occurred. As a result, "sovereign immunity shields the Federal Government and its agencies from suit" unless the United States has waived its right to sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

Similarly, a federal court is without jurisdiction to entertain a suit against the United States or a federal agency for monetary damages unless there has been a waiver of sovereign immunity. *U.S. v. Testan*, 424 U.S. 392, 400–01 (1976). Hornsby has not identified any such waiver that allows an individual to sue EEOC or the MSPB for damages in connection with the processing of a complaint of discrimination. Nor do any of the statutes cited by Hornsby authorize monetary damages against either the EEOC or the MSPB in such a situation. Indeed, there has been no waiver of sovereign immunity allowing suits against federal agencies for monetary damages based on allegations that a federal agency violated an individual's constitutional rights. *F.D.I.C. v. Meyer*, 510 U.S. 471, 485–86 (1994). This alone is sufficient reason to dismiss Hornsby's claims against the EEOC and MSPB without addressing the merits.

In addition, to the extent Hornsby is attempting to bring a claim against the EEOC or the MSPB under Title VII, Title VII does not confer a private right of action against an agency for "improper investigation or processing of a federal administrative employment discrimination complaint." *Angus v. Mayorkas*, No. 22-50600, 2023 WL 3918986, at *6 (5th Cir. June 9, 2023) (unpublished); s*ee Gibson v. Mo. Pac. R.R.*, 579 F.2d 890, 891 (5th Cir. 1978). "In fact, the law is clear that Title VII does not provide for a private cause of action against the EEOC by individuals who were not employees of the EEOC," and there is no jurisdiction under Title VII for "cases brought by an individual against the EEOC as an enforcement agency." *Newsome v. E.E.O.C.*, No. CIV.A.3:97-CV-3172-G, 1998 WL 792502, at *2 (N.D. Tex. Nov. 5, 1998), *aff'd*, 182 F.3d 915 (5th Cir. 1999); *Potter v. Reno*, No. CIV. A. 94-835, 1994 WL 731284, at *2 (D.D.C. Oct. 17, 1994).

Indeed, there is no jurisdiction for a federal court to consider "a claim by a federal employee against the EEOC, or any other agency, challenging any aspect of the administrative processes (or any application of that process) by which complaints of discrimination are investigated and resolved." *Hamlett v. Ashcroft*, No. Civ.A.3:03-CV-2202-M, 2004 WL 813184, at *3 (N.D. Tex. Apr. 14, 2004), *adopted*, 2004 WL 1074028 (N.D. Tex. May 11, 2004) (quoting *Storey v. Rubin*, 976 F. Supp. 1478, 1483 (N.D. Ga. 1997) (dismissing the plaintiff's claims against the EEOC for lack of subject matter jurisdiction under Rule 12(b)(1))). And "Congress has not explicitly created a right of action against the EEOC or any other agency based upon the handling of an administrative complaint of discrimination. Further, it is well settled

that charging parties do not have an implied remedy against the EEOC or any other agency arising from the handling of a charge or a decision." *Storey*, 976 F. Supp. at 1483 (citing *Gibson v. Missouri Pac. R.R. Co.*, 579 F.2d 890, 891 (5th Cir.1978)).

Even construing all of Hornsby's factual and legal allegations in his favor, the undersigned concludes that this Court lacks subject matter jurisdiction over Hornsby's claims against the EEOC and the MSPB. Accordingly, these claims should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See Newsome*, 1998 WL 792502, at \*2; *see also Potter*, 1994 WL 731284, at \*2; *Storey*, 976 F. Supp. at 1483. Accordingly, the Court need not consider the merits of these claims. *Ramming*, 281 F.3d at 161; *Hitt,* 561 F.2d at 608.

## C. Failure to State a Claim

The undersigned has analyzed Hornsby's complaint in detail and notes that Hornsby supplements many of his factual allegations with legal conclusions and analysis, but these legal conclusions are not entitled to any deference under the Rule 12(b)(6) standard. *See Murphy v. Amarillo Nat'l Bank*, No. 2:20-CV-048-Z, 2021 WL 40779, at \*4 (N.D. Tex. Jan. 5, 2021) ("[T]he Court owes no deference under Rule 12(b)(6) in reviewing these legal conclusions, and is not required to accept such statements as true."). Even accepting Hornsby's remaining factual allegations as

true, the undersigned concludes that Hornsby has failed to state a claim for relief under any the causes of action asserted in his complaint.

### 1.    Hornsby fails to state a claim that the Department of Commerce's Office of Civil Rights retaliated against him.

Hornsby argues that the Office of Civil Rights would not allow him to amend his EEO complaints "in reprisal for having exercised [his] right to petition the government." (Compl. ¶¶ 164–68 (citing 29 C.F.R. § 1614.106).) But Hornsby provides no information beyond these cursory allegations to indicate that any retaliation occurred. As an initial matter, before complaining to the Office of Civil Rights, Hornsby had already filed several complaints with the EEOC and had appealed to the MSPB. (*See* Dkt. No. 37 at App. 024.) In addition, Hornsby's complaint quotes an excerpt from an email communication from Kenya Halliday, Acting Director of the Office of Civil Rights, indicating that Hornsby had already been allowed to amend his EEO complaints. (*See* Compl. ¶ 167 (email stating that Hornsby's EEO complaints had already been amended three times, and the amended claims had been accepted for investigation).) Furthermore, according to the quoted email, the Office of Civil Rights did not state that Hornsby could *never* amend his EEO complaints, only that there would be "no further amendment of [his] consolidated complaints based on the attachments" he had submitted. (*Id.*) Thus, it appears that Hornsby may have been allowed to further amend his complaint if he provided new evidence. In any event, however, even under the most liberal construction of Hornsby's allegations, Hornsby has failed to plausibly any facts to

remotely suggest an inference of retaliation by the Office of Civil Rights.

Accordingly, this claim should be dismissed for failure to state a claim.

### 2. Hornsby does not plausibly allege that the Bureau violated the CSRA.

Hornsby alleges that he was entitled to protections against removal from federal employment and that the Bureau was required to provide him with advance notice of termination and a hearing under 5 U.S.C. § 7513. (Compl. ¶¶ 6–7.)

Hornsby is correct that before a federal employee is removed, he is entitled to certain protections under the CSRA. *See* 5 U.S.C. §§ 7512. But here, the actions taken against Hornsby did not constitute adverse actions entitling him to CSRA protections. *See id.* Federal employees are entitled to certain protections when their employing agency takes an "adverse action" against them including 30 days' advance written notice and the opportunity to be heard. *See* 5 U.S.C. § 7513(b). These adverse actions include (1) removal, (2) suspension for more than 14 days, (3) reduction in grade, (4) reduction in pay, and (5) furlough of 30 days or less. 5 U.S.C. § 7512. An employee who suffers one of these actions may appeal to the MSPB. 5 U.S.C. § 7513(d).

Hornsby first alleges that he suffered a removal from his employment position without proper notice or a hearing. (*See, e.g.*, Compl. ¶¶ 84, 89.) But Hornsby was not removed from his position—it ended at the expiration of his appointment. The Bureau's decision not to renew his time-limited appointment or to move forward with the alleged extension does not constitute a removal. As the Federal Circuit has

explained, "an employee's separation from service due to the expiration of his term appointment is not an adverse action appealable to the [MSPB]." *Townsend v. MSPB*, No. 98-3330, 1999 WL 401486, at *1 (Fed. Cir. June 14, 1999); *Mullins v. Dep't of Just.*, No. SF0752930053-I-1, 1993 WL 180857 (M.S.P.B. May 24, 1993) (citing 5 C.F.R. § 752.401(b).).  That is why the MSPB repeatedly determined it did not have jurisdiction over Hornsby's claims, as he was not challenging an action covered by the Act.  (*See e.g.*, Doc. 37 at App. 004, 016–17.)  Hornsby has thus failed to establish that an adverse action was taken against him in violation of the CSRA with respect to removal from his position.

Hornsby also appears to allege that he suffered an adverse action entitling him to CSRA protections because his decision to accept the "Agency Offer of change [from] GG-11 Pay Grade to Lower GG-5 pay grade was involuntary."  (Compl. ¶ 111.)  But Hornsby's own complaint disputes this allegation.  The complaint clearly alleges that Carrow sent him an email on August 26, 2021, offering to extend Hornsby's employment beyond September 24, 2021, as a GG-5 clerk (*id*. ¶ 108), and Hornsby "chose to accept this extension" (*id*. ¶ 109).   The offered extension would have only extended Hornsby's NTE date to December 31, 2021.   (*Id*. ¶ 110.)

Although Hornsby contends he was "induced" into "involuntarily accepting the GG-5 clerk position because the Bureau intended to replace him with a Caucasian female," his own "evidence" establishes that  Hornsby voluntarily decided to accept the NTE date extension with reduction to GG-5, but he thought better of that decision when he learned that his payout on separation would be considerably

lower.  (*Id.* ¶ 114.)  He "realized it was in his best interest to be separated as a GG 11 instead of as a GG 5 clerk—so he requested that Don and RCC management keep him to the original NTE of 9/24/2021."

Furthermore, Zwahlen explained to Hornby that he was not being "voluntarily downgraded under a Reduction in Force initiative ("RIF"), but rather, Hornsby was "on a Temporary NTE appointment [which] means that you can and/or will be separated from service for either Lack of Work or Expiration of Appointment" and "OPM RIF standards and policies do not apply."  (Compl. ¶ 113.)  Hornsby's own "evidence" also suggests that when it came time for the Bureau to reduce administrative specialists, Hornsby "was scheduled to be separated or converted back to a clerk" because they needed to retain those [administrative specialists] that were actually performing administrative duties [such as] hiring, payroll, [and] recordkeeping," and Hornsby "perform[ed] none of those tasks."  (*Id.* ¶ 114.)

Although Hornsby attempts to recharacterize the expiration of his time-limited appointment as a "removal" or a "forced involuntary retirement" (*see* Dkt. No. 51 at 4, 19), Hornsby remained at all times on a time-limited appointment with the Bureau—an appointment that "by its own terms, expired" on some predetermined date (*see* Dkt. No. 37 at App. 004) either as a GG-11 on September 24, 2001, his original NTE date or as a GG-5 on December 31, 2021, the proposed amended NTE date.  (*See* Compl. ¶¶ 108-110.)  Because Hornsby has not established that an

-26-

appealable agency action was taken against him, he has failed to state a claim that
the Bureau violated the CSRA, and any such claims should be dismissed.

### 3.    Hornsby fails to state a claim for relief under the EPA.

Hornsby cites the EPA in his complaint but does not directly tie his factual
allegations to any violations of the EPA.  (Compl. ¶¶ 9, 187.)   He appears to base
this claim on the alleged withholding of his 2019 offer letter until September 2021,
and the alleged procedural errors with his performance reviews from January 2020
through November 2021.  (*See id*. ¶¶ 30–45, 48–76.)

To establish a prima facie case under the EPA, Hornsby is required to show:
(1) his "employer is subject to the Act," (2) he "performed work in a position
requiring equal skill, effort, and responsibility under similar working conditions,"
and (3) he "was paid less than the employee of the opposite sex providing the basis of
comparison."  *Chance v. Rice University*, 984 F.2d 151, 153 (5th Cir. 1993).  Here,
Hornsby makes no showing that that the Bureau paid different wages to employees
of opposite sexes for equal work, as is necessary to state a claim under the EPA.  *See
id*.

Specifically, Hornsby never alleges that female employees were paid more nor
identifies any female employee who performed his same work and was paid more
than he was paid.  (*See* Compl. ¶¶ 44, 61.)  Instead, he argues that various
unidentified employees were paid salaries in line with the terms of their offer letter
and were given performance reviews.  (*See id*.)  In other allegations, Hornsby argues
that, unlike him, two specific female employees had their terms of appointment

-27-

extended.  (*See id.* ¶¶ 84, 97, 105, 127–29.)  However, Hornsby does not assert that these female employees were paid more than he was, but rather that their employment lasted longer.  (*See id.*)  Accordingly, Hornsby has failed to plead a prima facie case under the EPA, and his claims should be dismissed pursuant to Rule 12(b)(6).

Even if Hornsby stated a claim under the Act, his claims would be barred by the statute of limitations.  Violations of the EPA are subject to a two-year statute of limitations from the date the cause of action accrues.  29 U.S.C. § 255(a).  If the violation is willful, the EPA allows for a three-year statute of limitations.  *Id.*  Here, Hornsby's causes of action accrued at the latest in November 2021.  His claim arising from the allegedly withheld offer letter accrued on September 7, 2021, when he admits he received the letter.  (Compl. ¶ 38.)  His cause of action as to most of the performance reviews accrued by September 24, 2021, his final day of employment with the Bureau.  (*Id.* ¶¶ 52–71.)  Hornsby also asserts procedural errors with his "exit [performance review]," completed November 24, 2021.  (*Id.* ¶¶ 72–74.)

Because Hornsby's claims accrued in November 2021, Hornsby was required to file suit no later than November 2023.  *See* 29 U.S.C. § 255(a). However, Hornsby did not file suit until October 2024 (*see* Dkt. No. 3)—many months after the statute of limitations had run.  Even if the longer statute of limitations for "willful" violations is applied, it had still run as to most of Hornsby's claims before he filed suit, with the potential exception of the final performance review.  In any case, Hornsby has not alleged a willful violation of the Act.

In addition, Hornsby cannot avoid the limitations bar by arguing that he was pursuing administrative relief on these claims because "Equal Pay Act claims do not require exhaustion of administrative remedies." *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 119 (5th Cir. 2005). As Hornsby failed to timely file suit before the statute of limitations had run, he has failed to state a claim for relief under the EPA.

### 4. Hornsby fails to state a discrimination claim against the Bureau under either the ADEA or the Rehabilitation Act.

Hornsby generally alleges that the Bureau discriminated against him on the basis of age and disability in violation of the ADEA (prohibiting discrimination based on age) and the Rehabilitation Act (prohibiting discrimination based on disability). (Compl. ¶¶ 5, 9–10, 187.) But other than including the words "age" and "disability" in a few paragraphs (*see id.* ¶¶ 131, 132, 134, 137, 138), his complaint lacks any substantive allegations as to these claims.

To establish a prima facie case of age discrimination, a plaintiff is required to show that (1) his is "within the protected class," (2) he was "qualified for the position," (3) he "suffered an adverse employment decision," and (4) he was "replaced by someone younger or treated less favorably than similarly situated younger employees (*i.e.*, suffered from disparate treatment because of membership in the protected class)." *Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013) (quoting *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)).

To prevail on a claim under the Rehabilitation Act, a plaintiff must show that he (1) is "disabled within the meaning of the ADA," (2) is "qualified and able to

perform the essential functions of [the] job," and (3) was fired because of his disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010).

Here, Hornsby only makes a few generic allegations that the Bureau discriminated against him and unnamed others based on multiple characteristics, including age and disability, and that "but for" that discrimination, the Bureau would have posted certain job openings that Hornsby asserts he would have applied for and received. (Compl. ¶¶ 131, 132, 134, 137, 138.) But Hornsby does not provide any specific facts or information alleging age or disability discrimination by the Bureau. Nor does he plausibly allege any facts to show that he would have been hired for these positions but for any alleged age or disability discrimination. These allegations are insufficient to state any claim for relief under either the ADEA or the Rehabilitation Act.

Because Hornsby has failed to provide any factual content from which the court could draw reasonable inferences in his favor, he has not sufficiently stated a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *Earle*, 517 F.3d at 742; *Ashcroft*, 556 U.S. at 678. Even construing his pro se pleadings liberally, he has not adduced facts supporting any element required to state a claim under the ADEA or the Rehabilitation Act, and the Court is not required to create a cause of action where there is not one. *Brown*, 985 F.3d at 494; *Woods*, 870 F.2d at 288 n.3; *Smith*, 2013 WL 2291886, at *8. Accordingly, Hornsby's claims under both statutes should be dismissed.

**5.    Hornsby fails to plausibly state a Title VII discrimination claim against the Bureau.**

Hornsby includes multiple allegations that the Bureau discriminated against him on the basis of race, color, and sex in violation of Title VII, including that the Bureau discriminated against him by: (1) seriously reducing his pay, (2) constructively removing and replacing him in his appointed position, (3) inducing him to abandon his appointment amounting to constructive involuntary resignation and retirement, (4) engaging in favoritism in hiring practices, (5) denying him the opportunity to compete for open promotional positions, (6) influencing him to withdraw applications from prospective positions to injure future employment prospects, and  (7) engaging in unlawful employment practices in response to his EEO complaint.   (*See* Compl. ¶¶ 77, 79–102, 105–23, 125–40, 142–57.)

With respect to federal employment, Title VII of the Civil Rights Act of 1964 states that "[a]ll personnel actions affecting employees or applicants for employment" within executive agencies, subject to some exceptions, "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).  Section 2302(a)(2)(A) of Title 5, "which governs federal employment," defines "personnel actions" for purposes of discrimination in federal employment. *Babb v. Wilkie*, 589 U.S. 399, 405 (2020).  A "personnel action" includes, among other things, appointments, promotions, performance evaluations, and decisions regarding pay.  5 U.S.C. § 2302(a)(2)(A).

At the motion to dismiss stage, a plaintiff is not required to "plead a prima facie case of discrimination," but rather must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [the] case plausible." *Besser v. Texas General Land Office*, 834 F. App'x 876, 881 (5th Cir. 2020) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (2016). Although employment discrimination cases do not call for a heightened pleading standard, the "language of a prima facie case" can be used "as a framing device" to determine whether sufficient facts have been alleged as to each element of the claim. *Id*. (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). Thus, Hornsby must allege sufficient facts that he suffered an "adverse employment action" which was done "because of" his protected status. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019).

In pleading an adverse employment action, "a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton v. Dallas County*, 79 F.4th 494, 502–03 (5th Cir. 2023) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984)). The discrimination claim must "involve[] a meaningful difference in the terms of employment and one that injures the affected employee." *Harrison v. Brookhaven School Dist.*, 82 F.4th 427, 431–32 (5th Cir. 2023) (citing *Threat v. City of Cleveland, Ohio*, 6 F.4th 672, 678 (6th Cir. 2021)). The injury alleged must be more than a *de minimis* injury. *Id*. at 432.

The Fifth Circuit has "affirmed dismissals of discrimination suits when a plaintiff 'did not allege any facts, direct or circumstantial, that would suggest [the defendant's] actions were based on [the plaintiff's] race or national origin or that [the defendant] treated similarly situated employees of other races or national origin more favorably.'"  *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *6 (5th Cir. Oct. 8, 2024) (unpublished) (quoting *Raj v. La. State. Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

As noted previously, Hornsby repeatedly uses phrases like "constructive removal," "replacement," and "involuntary retirement" to argue that the Bureau's decision not to extend his time-limited appointment was an "adverse employment action," but these alleged actions are not among the personnel actions enumerated in section 2302.  *See* 5 U.S.C. § 2302(a)(2)(A).  Moreover, the Bureau's alleged rescission of a promise to extend Hornsby's time-limited appointment prior to its termination does not actually affect any of the terms, conditions, or privileges of employment.  Hornsby's appointment, "by its own terms, expired on September 24, 2021" (*see* Dkt. No. 37 at App. 004), and Hornsby does not contest that he worked for the Bureau through that date (*see* Compl. ¶ 79).  Therefore, his employment ended on the date that it was set to end, which is not an "adverse employment action" as required to sufficiently plead a Title VII disparate treatment claim.

Hornsby also argues that the time-limited appointments of two white female employees were extended while his was not, which he contends shows discriminatory animus.  (Compl. ¶¶ 84, 96, 98, 127.)  But Hornsby acknowledges

that he was informed of the Bureau's legitimate nondiscriminatory reasons for extending these appointments. One of the female employees, Magdalena Rivera, had seniority in the department,[3] and the other, Julie Miller, was already a permanent employee. (*Id.* ¶¶ 86, 128.) While Hornsby was understandably frustrated that his employment was not extended, this does not constitute an adverse employment action taken because of Hornsby's race or sex. *See Cicalese*, 924 F.3d at 767.

Finally, Hornsby's claim that the Bureau violated Title VII by failing to post open positions due to a speculative discriminatory intent also fails to sufficiently plead a Title VII disparate-treatment claim. The failure to post these allegedly open positions does not constitute either an adverse personnel action under Section 2302 or an "adverse employment action" as the term has been defined by the Fifth Circuit, *see Harrison*, 82 F.4th at 430–31; *Hamilton*, 79 F.4th at 506. Therefore, Hornsby's

---

[3] Hornsby disputes that Riviera had seniority over him, contending that although she began working in the Space & Leasing department before Hornsby, she left the department in February 2019, while Hornsby continued in the department without a break since October 1, 2018. (*See* Compl. ¶ 87.) But, as noted previously, Hornsby's factual contentions regarding his various appointments with the Bureau are inconsistent and unclear. Furthermore, his own factual allegations do not support his contention that he worked in the Space & Leasing department continuously since October 1, 2018. (*See id.* ¶¶ 48-49 (alleging he was not assigned to the Space & Leasing department until February 2019); *id.* ¶¶ 30-31 (alleging that he accepted a GG-9 Administrative Specialist appointment in November 2019); *id.* ¶ 114 (evidence suggesting that Hornsby was separated because he was not performing the same administrative duties as those administrative specialists who were retained).)

Title VII discrimination claim against the Bureau should be dismissed for failure to state a claim.

### 6. Hornsby fails to plausibly state a Title VII retaliation claim against the Bureau.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he "engaged in an activity protected by Title VII, (2) "an adverse employment action occurred," and (3) "a causal link existed between the protected activity and the adverse action." *Gee v Principi*, 289 F.3d 342, 345 (5th Cir. 2002). An adverse employment action in a retaliation claim is an employer action that "would have been materially adverse to a reasonable employee or job applicant" which can mean "that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). To establish a causal link, a plaintiff can establish facts permitting an inference of the employer's knowledge of the protected activity. *Smith*, 2024 WL 4442040, at *7. Moreover, temporal proximity between the protected conduct and retaliatory action can sometimes on its own be sufficient. *Id*.

Hornsby claims that the Bureau retaliated against him for filing an EEO complaint because it failed to provide accurate information to the Texas Workforce Commission ("TWC") about the wages he earned while employed by the Bureau. (Compl. ¶¶ 142, 147.) Hornsby admits the information provided by the Bureau was accurate as to the total amount he was paid, but it incorrectly listed the amount he

was paid in each quarter. (*Id.* ¶ 155.)  Hornsby argues that he told the TWC about this error on four forms he submitted to the state agency between late October and mid-December 2021, and that the TWC later told him it had not received a response from the Bureau. (*Id.* ¶¶ 151–52.)  But Hornsby also asserts that within four days of his notification of the error to the Bureau in early December 2021, the Bureau had already acted to have the corrected information submitted to the state agency. (*Id.* ¶ 146.) While the incorrect submission appeared to have occurred around the same time as Hornsby's filing of his initial EEO complaint in October 2021, Hornsby does not allege when he actually submitted his EEO complaints to the Bureau. (*See* Dkt. No. 37 at App. 002; *see also* Compl. ¶¶ 148, 150, 152.)

Hornsby has failed to establish the necessary elements for a prima facie case of retaliation.  As previously explained, Hornsby's removal and reduction in grade and pay claims were not adverse employment actions because the expiration of Hornby's appointment does not constitute a removal, and he voluntarily reduced his grade and pay from GG-11 to the GG-5.  *Townsend*, 1999 WL 401486, at *1; *Mullins*, 1993 WL 180857 (M.S.P.B. May 24, 1993) (citing 5 C.F.R. § 752.401(b)).  The Bureau's alleged failure to provide the correct wage information to the TWC is also not an adverse employment action.  At worst, it amounts to an administrative error, which was corrected by December 12, 2021, when Hornsby identified the issue to the Bureau. (*See* Compl. ¶ 146.)  After this date, Hornsby provides no new facts that the Bureau continued to withhold his correct wage information from the TWC.  While Hornsby believes this error was retaliation for his EEO complaints, he provides no

information to show any causal connection between the two events.  *See English v. Perdue*, 777 F. App'x 94, 99 (5th Cir. 2019); *Smith*, 2024 WL 4442040, at *7. Because Hornsby has failed to plead two necessary elements for a prima facie retaliation claim under Title VII, his retaliation claim should be dismissed.

### 7.    Hornsby fails to plausibly state a claim that the Bureau suppressed evidence relating to the processing of his EEO complaints.

Finally, Hornsby alleges that, during the MSPB process, the Bureau withheld "the Report of Investigation Record Evidence," which prevented him from establishing his claims.  (Compl. ¶¶ 160, 171, 173.)  He asserts that this "suppress[ion]" violated his First and Fifth Amendment rights "against Reprisal for exercising Rights of Access seeking to petition [the] government."  (*Id*. ¶ 173.)  But these records were part of the record in the underlying EEOC process in which Hornsby participated, and Hornsby had the same access to these records as the Bureau.  Hornsby also fails to mention that he sought an order to compel the Bureau to provide these records, which the MSPB AJ denied because Hornsby "failed to show how these documents would have assisted him in making a nonfrivolous allegation of Board jurisdiction."  (Dkt. No. 37 at App. 002, 17.)  Hornsby therefore has failed to state a claim for relief as to "suppression" of the EEO report of investigation, and this claim should be dismissed pursuant to Rule 12(b)(6).

## IV.  LEAVE TO AMEND

The Fifth Circuit advises courts to give pro se plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-

1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. CIV.A.3:00CV0863D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). District courts therefore typically allow pro se plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. CIV.A.3:96-CV-2923-D, 2004 WL 789870, at *1 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. But "granting leave to amend is not required if the plaintiff has already pleaded his 'best case.'" *Bryant v. Wells Fargo Bank, N.A.*, No. 3:17-CV-3121-C (BT), 2018 WL 4290791, at *4 (N.D. Tex. Aug. 23, 2018), *adopted*, 2018 WL 4283556 (N.D. Tex. Sept. 7, 2018) (citing *Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017)).

Here, because Hornsby has submitted four complaints, he has been given several opportunities to amend or supplement his allegations through an amended complaint. Furthermore, Hornsby has had an opportunity to plead his best case in response to Defendants' motions to dismiss. *See Williams v. Richardson ISD*, No. 3:24-CV-1288-D-BW, 2025 WL 2534677, at *15 (N.D. Tex. Aug. 12, 2025), *adopted*, 2025 WL 2533105 (N.D. Tex. Sept. 2, 2025). Accordingly, the undersigned concludes that Hornsby has pleaded his "best case" and further leave to amend is not warranted. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) (a court has discretion not to allow amendment when an amendment would be frivolous or futile); *Beam v. Caliber Home Loans, Inc.*, No.

3:19-CV-01201-M-BT, 2020 WL 5868567, at *4 (N.D. Tex. Aug. 27, 2020) *adopted as modified*, 2020 WL 5848973 (N.D. Tex. Oct. 1, 2020) (dismissing plaintiff's amended complaint after determining plaintiff pleaded her best case).

Furthermore, based on the most deferential review of the allegations in his fourth amended complaint and the documents presented, it is highly unlikely that, given the opportunity, Hornsby could allege any viable legal claims. Thus, the undersigned concludes that granting leave to amend under these circumstances would be futile and cause needless delay. *See Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("[J]udges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.") (citations omitted).

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' motion to dismiss (Dkt. No. 45), be **GRANTED**, Plaintiff Harold Hornsby's claims against the Equal Employment Opportunity Commission and the Merit Systems Protection Board should be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and his remaining claims against all other Defendants should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**SO RECOMMENDED** on December 8, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

### NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).